United States District Court
Southern District of Texas

**ENTERED**

November 21, 2025

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CODY ALLEMOND,                         §
                                       §
                Plaintiff,             §
                                       §
v.                                     §    CIVIL ACTION NO. H-24-2560
                                       §
TALOS QN EXPLORATION LLC and           §
QUARTERNORTH ENERGY LLC,               §
                                       §
                Defendants.            §

## MEMORANDUM OPINION AND ORDER

Cody Allemond ("Plaintiff") brought this action against Talos QN Exploration LLC ("Talos") and QuarterNorth Energy LLC ("QuarterNorth") (collectively referred to hereafter as "Defendants"), alleging that his injuries were caused by Defendants' negligence.[1] Pending before the court is the Motion for Summary Judgment by QuarterNorth Energy LLC and Talos QN Exploration LLC ("Defendants' MSJ") (Docket Entry No. 21) and Motion to Strike Declaration of Michael P. Terrell, P.E. by QuarterNorth Energy LLC and Talos QN Exploration LLC ("Defendants' Motion to Strike") (Docket Entry No. 24). For the reasons stated below, Defendants' MSJ will be granted and Defendants' Motion to Strike will be denied as moot.

---

[1]Plaintiff's First Amended Complaint ("Amended Complaint"), Docket Entry No. 11, pp. 3-4. Because QuarterNorth changed its name to Talos QN Exploration LLC sometime after March 30, 2024, Answer and Affirmative Defenses of QuarterNorth Energy LLC, Docket Entry No. 10, p. 1, Plaintiff amended his complaint to include QuarterNorth as a defendant. Amended Complaint, Docket Entry No. 11, p. 1. All page numbers reference the pagination imprinted at the top of the page by the court's Electronic Case Filing system.

## I.  **Background**

Defendants owned and operated an offshore platform located south of Louisiana in the Gulf of Mexico, Vermillion Block 362B.[2] At the time of the accident Defendants had begun the process of decommissioning their platform.[3] Defendants employed Facilities Consulting Group, LLC ("FCG") and Acadian Contractors, Inc. ("Acadian") as independent contractors on the decommissioning project.[4]

Defendants designated Anthony Daw, who was employed by FCG, as the person in charge of the platform.[5] Daw reported to and received instructions from Scotty Godchaux, who was employed by Defendants as a project manager.[6] Daw and Godchaux spoke daily.[7] Part of Daw's job as the person in charge was to direct the head superintendent on

---

[2]Oral and Videotaped Deposition of Steven Cole as Corporate Representative of Talos QN Exploration LLC ("Cole Deposition"), Exhibit 1 to Plaintiff's Response to Defendants' Motion for Summary Judgment ("Plaintiff's Response"), Docket Entry No. 22-1, p. 11 lines 2-7, p. 17 lines 4-20; Map of Vermilion Block 362, Exhibit A2 to Defendants' MSJ, Docket Entry No. 21-2.

[3]Cole Deposition, Exhibit 1 to Plaintiff's Response, Docket Entry No. 22-1, p. 24 lines 12-22.

[4]FCG Master Service Agreement, Exhibit F to Defendants' MSJ, Docket Entry No. 21-7, p. 1; Acadian Master Service Agreement, Exhibit E to Defendants' MSJ, Docket Entry No. 21-6, p. 1.

[5]Remote Oral and Videotaped Deposition of Anthony Daw ("Daw Deposition Excerpts"), Exhibit C to Defendants' MSJ, Docket Entry No. 21-4, p. 5 lines 23-25; Cole Deposition, Exhibit D to Defendants' MSJ, Docket Entry No. 21-5, p. 5 lines 10-20.

[6]Daw Deposition Excerpts, Exhibit C to Defendants' MSJ, Docket Entry No. 21-4, p. 6 lines 12-22.

[7]Id. lines 23-25.

the platform[8] and to ensure that the proper safety procedures were being followed.[9]  Daw had ultimate work authority on the platform, which allowed him to stop any work that was unsafe.[10]

Some time in March of 2024 Daw noticed that a conductor pipe[11] on one of the wells of the platform was moving.[12]  Daw notified his supervisor, Godchaux, that the conductor was moving.[13]  Godchaux told Daw to ensure that the conductor was secured.[14]

Daw then asked Banning Ohlin, who was in charge of the Acadian crew,[15] to secure the conductor.[16]  Acadian, using its own employees and equipment,[17] placed a come-along on the conductor to reduce its movement.[18]  Once the conductor was secured with the come-along,

---

[8]Id. at 36 lines 7-9.

[9]See id. at 67 lines 2-7.

[10]Id. at 8 lines 3-7, 47 lines 19-24.

[11]A conductor is a protective casing that is put on the outside of a production string.  Remote Oral and Videotaped Deposition of Anthony Daw ("Daw Deposition"), Exhibit 3 to Plaintiff's Response, Docket Entry No. 22-3, p. 57 lines 1-8.

[12]Id. at 57 lines 17-21, 71 lines 15-24.

[13]Id. at 123 lines 7-24.

[14]Id.

[15]See Daw Deposition Excerpts, Exhibit C to Defendants' MSJ, Docket Entry No. 21-4, pp. 41 lines 15-20, 43 lines 3-6.

[16]Id. at 43 lines 7-11, 67 lines 8-20.

[17]Id. at 43 lines 13-23.

[18]Id. at 31 lines 9-11, 32 lines 4-16; Cole Deposition, Exhibit D to Defendants' MSJ, Docket Entry No. 21-5, p. 18 lines 16-24, p. 19 lines 5-8.  A come-along is a "mechanical device (continued...)

-3-

Acadian was going to weld support braces onto the cellular deck to further secure the conductor from moving inside the bell guide.[19]

Before Acadian could begin welding on the cellular deck, certain safety procedures had to be followed. First, Acadian had to execute a job safety analysis ("JSA").[20] To execute the JSA, the Acadian employees individually read and signed the document.[21] Additionally, a pre-job safety meeting was conducted by Donovan Nelton[22] to discuss the JSA with the Acadian employees.[23] The JSA warned the workers to "[b]e aware of hand placement[,] [k]eep fingers out of pinch points," and to "[w]ear impact type gloves."[24] Once the JSA was completed, Ohlin presented it to Daw, who signed

_____

[18](...continued)
with a chain used to lift and lower lifts up to 3 tons." Daw Deposition, Exhibit 3 to Plaintiff's Response, Docket Entry No. 22-3, p. 72 lines 9-11, p. 73 lines 4-16.

[19]Daw Deposition, Exhibit 3 to Plaintiff's Response, Docket Entry No. 22-3, p. 27 lines 21-25, p. 28 lines 1-4; Oral Deposition of Cody Allemond ("Allemond Deposition"), Exhibit 2 to Plaintiff's Response, Docket Entry No. 22-2, p. 80 lines 17-25, p. 81 lines 8-11.

[20]Daw Deposition Excerpts, Exhibit C to Defendants' MSJ, Docket Entry No. 21-4, p. 25 lines 6-18. The JSA describes the "steps and mitigations that the superintendent of [Acadian] thinks is necessary to complete his task." Id. lines 19-25.

[21]Id. at 56 lines 18-25, 57 lines 1-4.

[22]Donovan Nelton was the Health, Safety, and Environment consultant on the project and was employed by Pharma-Safe Industrial Services. Daw Deposition, Exhibit 3 to Plaintiff's Response, Docket Entry No. 22-3, p. 126 lines 5-17.

[23]Allemond Deposition, Exhibit 2 to Plaintiff's Response, Docket Entry No. 22-2, p. 62 lines 14-20.

[24]Id. at 70 lines 21-25, 71 lines 11-13.

-4-

off on it as the person in charge of the platform.[25]  Acadian also
had to have a hot work permit issued.[26]  The hot work permit, like
the JSA, was individually read and signed by Acadian employees and
sent to Daw for his signature.[27]  Finally, before the welding began,
the JSA required Daw to perform a walk through of the work site.[28]
Daw completed the walk through a couple hours before Plaintiff
began welding.[29]  Daw does not remember if he saw the conductor
moving during his walk through.[30]

     After the necessary safety steps were completed,[31] Ohlin told
Plaintiff, who was employed by Acadian, to weld the supports onto
the cellular deck.[32]  Plaintiff was an experienced welder and had
signed the JSA before he began his work.[33]  On the morning of

---

[25]Daw Deposition Excerpts, Exhibit C to Defendants' MSJ, Docket
Entry No. 21-4, p. 27 lines 2-7, p. 57 lines 5-9.

[26]Id. at 12 lines 8-11.

[27]Daw Deposition, Exhibit 3 to Plaintiff's Response, Docket
Entry No. 22-3, p. 30 lines 2-9, p. 114 lines 10-15.

[28]Id. at 71 lines 3-14.

[29]Id. lines 11-14.

[30]Id. lines 15-18.

[31]See id. at 42 lines 21-24 (JSA safety meeting), 46
lines 19-22 (hot work permit), 71 lines 11-14 (walk through).

[32]Allemond Deposition, Exhibit 2 to Plaintiff's Response,
Docket Entry No. 22-2, p. 35 lines 12-16; p. 53 lines 6-14.

[33]Id. at 14 lines 16-25.  At the time of the accident,
Plaintiff had been welding for 19 years and had been employed
welding on offshore platforms for at least 4 years.  Id. at 14, 20;
66 lines 18-25.

March 30, 2024, Plaintiff began to weld on the platform.[34] Although the conductor pipe was secured by the come-along, the conductor pipe was still moving when the welding began.[35] While welding, Plaintiff placed his finger between the angle iron and conductor pipe.[36] When the conductor pipe moved, Plaintiff's finger became caught and part of his finger was subsequently cut off.[37]

Defendants' MSJ argues that there is no genuine issue of material fact as to whether they are vicariously or directly liable for Plaintiff's injuries.[38] Plaintiff's Response argues that Defendants are vicariously and directly liable for his injuries under Louisiana's negligence and premises liability laws.[39] Defendants filed a reply[40] and a memorandum of law.[41]

---

[34]See id. at 34 lines 23-25, 35 lines 1-4, 36 lines 1-8.

[35]See id. at 86 lines 14-22; Decommissioning Incident Report, Exhibit 6 to Plaintiff's Response, Docket Entry No. 22-6, p. 1.

[36]Allemond Deposition, Exhibit 2 to Plaintiff's Response, Docket Entry No. 22-2, p. 86 lines 23-25, p. 87 lines 1-5.

[37]Id. at 103 lines 2-11.

[38]Defendants' MSJ, Docket Entry No. 21, p. 15.

[39]Plaintiff's Response, Docket Entry No. 22, p. 7. Plaintiff is alleging that Defendants are liable for his injuries under Louisiana Civil Code Article 2315 (vicarious liability) and Louisiana Civil Code Articles 2317, 2317.1, and 2322 (premises liability). Under Louisiana law there are two premises liability statutes. Article 2317 imposes a duty on the custodian of the defective thing and article 2322 imposes a duty on the owner of the defective thing.

[40]Reply Memorandum in Support of Motion for Summary Judgment by QuarterNorth Energy LLC and Talos QN Exploration LLC ("Defendants' Reply Memorandum"), Docket Entry No. 23.

[41]Memorandum of Law of QuarterNorth Energy LLC and Talos QN Exploration LLC ("Defendants' Memorandum of Law"), Docket Entry No. 31.

## II.   Summary Judgment Standard

"The court shall grant summary judgment if the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(a).   A party asserting that a fact is or is not genuinely
disputed must support the assertion by "citing to particular parts
of materials in the record." Fed. R. Civ. P. 56(c)(1)(A).   Summary
judgment is proper "after adequate time for discovery and upon
motion, against a party who fails to make a showing sufficient to
establish the existence of an element essential to that party's
case, and on which that party will bear the burden of proof at
trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).
"[T]he burden on the moving party may be discharged by 'showing' -
that is, pointing out to the district court - that there is an
absence of evidence to support the nonmoving party's case." Id. at
2554.   "The burden shifts to the non-moving party to show, with
competent evidence, the existence of a genuine dispute of material
fact." Miller v. Michaels Stores, Inc., 98 F.4th 211, 216 (5th
Cir. 2024).   "'The burden on the nonmoving party is not a heavy
one; the nonmoving party simply is required to show specific facts,
as opposed to general allegations, that present a genuine issue
worthy of trial.'" Swope v. Columbian Chemicals Co., 281 F.3d 185,
197 (5th Cir. 2002) (quoting 10A Wright, Miller & Kane, Federal
Practice and Procedure § 2727, at 490 (3d ed. 1998)).[42]   But "'[a]

---

[42]See also 10A Wright, Miller, & Kane, Federal Practice &
Procedure § 2727.2, at 501 (4th ed. 2016) (same).

-7-

mere scintilla of evidence is insufficient to present a question for the jury.'" Rex Real Estate I, L.P. v. Rex Real Estate Exchange, Inc., 80 F.4th 607, 616 (5th Cir. 2023).

The court "must view all facts and draw all reasonable inferences in [the nonmovant's] favor." Crawford v. Metropolitan Government of Nashville and Davidson County, Tennessee, 129 S. Ct. 846, 851 n.2 (2009) (internal quotation marks omitted). The court "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000).

"[E]vidence may be considered on summary judgment provided '[its] contents can be presented in admissible form at trial[.]'" Ford v. Anderson County, Texas, 102 F.4th 292, 325 (5th Cir. 2024) (per curiam) (quoting Patel v. Texas Tech University, 941 F.3d 743, 746 (5th Cir. 2019)); see also Fed. R. Civ. P. 56(c)(2).

### III. Applicable Law

The court has jurisdiction pursuant to the Outer Continental Shelf Lands Act ("OSCLA"). See 43 U.S.C. 1349(b)(1) (granting jurisdiction over disputes arising out of or in connection with the exploration, development, or production of minerals on the outer Continental Shelf). In actions brought under the OCSLA "federal law governs . . . to the extent that there is applicable federal law; however, if there is a gap in the federal law, the law of the adjacent state is used as a gap-filler and becomes surrogate

federal law." <u>Bartholomew v. CNG Producing Co.</u>, 862 F.2d 555, 557 (5th Cir. 1989); <u>see also</u> 43 U.S.C. 1333(a)(2)(A).  The Fifth Circuit has explained that a court should consider four factors in determining which state a fixed platform is "adjacent" to for OCSLA choice-of-law purposes: "(1) geographic proximity; (2) which coast federal agencies consider the subject platform to be 'off of'; (3) prior court determinations; and (4) projected boundaries." <u>Snyder Oil Corp. v. Samedan Oil Corp.</u>, 208 F.3d 521, 524 (5th Cir. 2000).  The parties have stipulated that Vermillion Block 362B is adjacent to the State of Louisiana.[43]

For state law to be applied as surrogate federal law three conditions must be met:

> (1)  The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto).
>
> (2)  Federal maritime law must not apply of its own force.
>
> (3)  The state law must not be inconsistent with [f]ederal law.

<u>Strong v. B.P. Exploration & Production, Inc.</u>, 440 F.3d 665, 668 (5th Cir. 2006) (quoting <u>Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.</u>, 895 F.2d 1043, 1047 (5th Cir. 1990)).

The parties do not dispute that the situs where the incident occurred is covered by OCSLA.[44]  The parties also agree that neither

---

[43]Joint Pretrial Order, Docket Entry No. 27, p. 10 ¶ 4.

[44]<u>Id.</u> at 15 ¶ 1.

federal maritime law nor federal common law applies in this case.[45]
Therefore, Louisiana state law governs.

## IV.  **Analysis**

Plaintiff asserts that Defendants are liable for his injuries
under both Louisiana's negligence and premises liability laws.[46]
Defendants argue that they are not vicariously liable for
Plaintiff's injuries because as a matter of law principals are not
liable for the negligence of their independent contractors.[47]
Defendants also argue that they are not liable under a premises
liability theory because (1) Plaintiff did not properly plead his
premises liability claims and (2) even if Plaintiff did properly
plead his premises liability claims, Plaintiff's role as an
independent contractor precludes recovery.[48]

In his Response, Plaintiff argues that Defendants are not
entitled to summary judgment because (1) Defendants failed to raise
the independent-contractor defense in their answer and

---

[45]See id. at 16 ¶ 2 (stating that Louisiana law applies); see
also Rodrigue v. Aetna Casualty and Surety Co., 89 S. Ct. 1835,
1839–42 (1969) (holding that federal admiralty law does not apply to
accidents occurring on fixed offshore drilling platform); Fontenot
v. Dual Drilling Co., 179 F.3d 969, 977 (5th Cir. 1999) ("[O]ur
circuit has consistently rejected attempts of litigants to have
'federal common law' override rules of Louisiana tort law in actions
arising on fixed platforms on the Outer Continental Shelf.").

[46]Plaintiff's Response, Docket Entry No. 22, pp. 20–23.

[47]Defendants MSJ, Docket Entry No. 21, pp. 17–18.

[48]Defendants' Reply Memorandum, Docket Entry No. 23, p. 2;
pp. 9–10.

(2) Defendants offered inadmissible evidence in support of their motion.[49]  Plaintiff also argues that there is more than a scintilla of evidence that Defendants are liable for Plaintiff's injuries under Louisiana Civil Code Articles 2315, 2317, 2317.1, and 2322.[50]

## A.  Plaintiff properly pled his premises liability claims.

A claim that is raised for the first time in response to a motion for summary judgment is not properly before the court. Cutrera v. Board of Supervisors of Louisiana State University, 429 F.3d 108, 113 (5th Cir. 2005) (citing Fisher v. Metropolitan Life Ins. Co., 895 F.2d 1073, 1078 (5th Cir. 1990)).  The court may only grant or deny summary judgment on claims as pled.  Cutrera, 429 F.3d at 113-14.

A complaint must "'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Trevino v. RDL Energy Services, L.P., Civ. A. H-14-1936, 2016 WL 11477431, at *3 (S.D. Tex. July 21, 2016) (quoting Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002)).  To do so, a plaintiff "must allege 'enough facts to state a claim to relief that is plausible on its face.'" Wesolek v. Layton, 914 F.Supp.2d 853, 859 (S.D. Tex. 2012) (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)).  The complaint must allege all required

---

[49]Plaintiff's Response, Docket Entry No. 22, pp. 24-25; p. 6.

[50]Id. at 25-28.

elements necessary to obtain relief.  Wesolek, 914 F.Supp.2d at 859.

To establish that Defendants are liable under articles 2317 and/or 2317.1, Plaintiff must show "(1) the property which caused the damage was in the 'custody' of the defendant; (2) the property had a condition that created an unreasonable risk of harm to persons on the premises; (3) the unreasonably dangerous condition was a cause-in-fact of the resulting injury; and (4) defendant had actual or constructive knowledge of the risk." Voces v. Energy Resource Technology, Civil Action No. 4:14-CV-525, 2016 WL 7757384, at *5 (S.D. Tex. Feb. 18, 2016).  To establish that the Defendants are liable under article 2322, Plaintiff must prove that (1) the defendant owned the building; "(2) the owner knew or, in the exercise of reasonable care, should have known of the ruin or defect; (3) the damage could have been prevented by the exercise of reasonable care; (4) the defendant failed to exercise such reasonable care; and (5) causation." Cordell v. Tanaka, LLC, No. 2017CA0285, 2018 WL 301331, at *4 (La. Ct. App. 1st Cir. Jan. 4, 2018) (quoting Broussard v. State ex rel. Office of State Buildings, 113 So.3d 175, 182–83 (La. 2013)).

Plaintiff properly pled his premises liability claims.  In his Amended Complaint, Plaintiff alleges (1) that Defendants owned and operated the platform, (2) that he was injured when the well casing on the platform moved, and (3) that Defendants failed to properly

oversee the platform and the work that was being done.[51]
Accordingly, Plaintiff's Amended Complaint alleges all required
elements necessary to obtain relief for premises liability under
Louisiana law. Wesolek, 914 F.Supp.2d at 859.

**B.    Defendants did not waive the independent contractor defense.**

Under the Federal Rules of Civil Procedure an affirmative
defense should be asserted in a responsive pleading or in a motion
before a responsive pleading. Fed. R. Civ. P. 8(c); id. at 12(b).
"The pleading of affirmative defenses is governed by the same
liberal standards as those for a complaint." Marine Overseas
Services, Inc. v. Crossocean Shipping Co., Inc., 791 F.2d 1227,
1233 (5th Cir. 1986).

It is unclear whether the independent-contractor defense is an
affirmative defense under Louisiana law. Compare Coleman v. BP
Exploration & Production Inc., No. 3:19-cv-102, 2020 WL 6292491, at
*3 (S.D. Tex. Oct. 27, 2020) ("This court has found no indication
that the independent-contractor exception to vicarious liability is
an affirmative defense . . . .") with Ragusa v. Louisiana Guaranty
Insurance Ass'n, Civil Action No. 21-1971, 2023 WL 2601438, at *2
(E.D. La. March 22, 2023) ("[T]he independent contractor defense is
an affirmative defense[.]"); see also Fireman's Fund Insurance Co.
v. R.S. Homes, LLC, 294 So.3d 54, 59 (La. Ct. App. 4th Cir. 2020)

---

[51]Amended Complaint, Docket Entry No. 11, p. 2.

("Whether the independent contractor defense is an affirmative defense is a question of fact.").

However, even if the independent-contractor defense is an affirmative defense under Louisiana law, Defendants have not waived it. Under Louisiana law, "[t]he primary question in determining whether [a defendant] is entitled to an independent contractor defense is whether he had the right to control and supervise the work performed by [the independent contractor]." <u>Ledent v. Guaranty National Insurance Co.</u>, 723 So.2d 531, 540 (La. Ct. App. 2d Cir. 1998). In their answer Defendants asserted that Plaintiff's injuries were caused solely by "third persons, parties, contractors, or entities for whose actions [Defendants are] not legally responsible."[52] Defendants also asserted that their actions or inactions were not a cause of Plaintiff's alleged injuries.[53] Accordingly, Defendants have not waived the independent contractor defense.

## C.   **Defendants' evidence submitted in support of their motion is admissible.**

Plaintiff argues that exhibits A (MMS Maps of the Vermilion Areas of the Louisiana OCS), E (the Master Service Agreement with Acadian), F (the Master Service Agreement with FCG), G (the Safety Meeting Report), and H (the Acadian HSE Report) to Defendants' MSJ

---

[52]Answer and Affirmative Defenses of QuarterNorth Energy LLC and Talos QN Exploration LLC, Docket Entry No. 12, p. 4 ¶ 4, p. 5 ¶ 6.

[53]<u>See</u> <u>id.</u> at 6 ¶ 16.

are inadmissible hearsay.[54]    However, because Plaintiff merely asserts this without explaining how each exhibit is hearsay, his argument is considered waived.[55]    Mosley v. Wood Group PSN, Inc., 760 F. App'x 352, 361 (5th Cir. 2019) (holding that when an issue is inadequately briefed, that issue is considered waived).

Even if the Plaintiff has not waived the argument, Defendants' evidence is not inadmissible hearsay.    Exhibit A is a public record, which is an exception to hearsay.    Fed. R. Evid. 803(8). Exhibits E, F, G, and H are not hearsay because they fall within the business records exception to hearsay.    Fed. R. Evid. 803(6); Wilson v. Zapata Off-Shore Co., 939 F. 2d 260, 271 (5th Cir. 1991) ("Double hearsay in the context of a business record exists when the record is prepared by an employee with information supplied by another person.    If both the source and the recorder of the information, as well as every other participant in the chain producing the record, are acting in the regular course of business, the multiple hearsay is excused by [Federal] Rule [of Evidence] 803(6).").

**D.    Defendants are entitled to summary judgment as a matter of law.**

Defendants argue that they are entitled to summary judgment because they are not directly or vicariously liable for Plaintiff's

---

[54]Plaintiff's Response, Docket Entry No. 22, p. 6.

[55]Id.    Plaintiff merely states that "Exhibits A, E, F, G, and H to Defendants' Motion are inadmissible unauthenticated hearsay, to which Plaintiff lodges a formal objection."    Id.

injuries as a matter of law.[56]  Plaintiff argues that there is more than a scintilla of evidence that Defendants are liable for his injuries under Louisiana Civil Code Articles 2315, 2317, 2317.1, and 2322, each of which is addressed in turn.[57]  As discussed above, Louisiana law has two different premises liability statutes.  While article 2317 imposes a duty on the <u>custodian</u> of the defective thing, article 2322 imposes a duty on the <u>owner</u> of the defective thing.

### 1.   <u>Louisiana Civil Code Article 2315 (Vicarious Liability)</u>

To establish that Defendants are liable under article 2315, Plaintiff must show: "(1) the defendant had a duty to conform his conduct to a specific standard [] ; (2) the defendant's conduct failed to conform to the appropriate standard [] ; (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries [] ; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries [] ; and (5) the actual damages [] ."  <u>Audler v. CBC Innovis Inc.</u>, 519 F.3d 239, 249 (5th Cir. 2008) (citing <u>Lemann v. Essen Lane Daiquiris</u>, 923 So.2d 627, 633 (La. 2006)).  Under Louisiana law, a principal "cannot be liable for injuries resulting from the negligent acts of an independent contractor . . . unless (1) the liability arises from ultrahazardous activities performed by the contractor on behalf of the principal or (2) the principal retains operational control over

---

[56]Defendants' MSJ, Docket Entry No. 21, p. 15.

[57]Plaintiff's Response, Docket Entry No. 22, pp. 25–28.

the contractor's acts or expressly or impliedly authorizes those acts."[58] Coulter v. Texaco, Inc., 117 F.3d 909, 911–12 (5th Cir. 1997).

A principal owes a duty to its independent contractor when the principal retains at least some control over the methods or details of the contractor's work.  Id.  To determine whether the operational control exception to liability applies, the court must first examine "whether and to what extent the right to control work has been contractually reserved by the principal."  Id. at 912.  The court must also determine if the principal had operational control over the independent contractor.  LeJeune v. Shell Oil Co., 950 F.2d 267, 270 (5th Cir. 1992).  Operational control exists when the principal retains such a "right of supervision that the contractor is not entirely free to do the work in his own way."  Id. (quoting Landry v. Huthnance Drilling Co., 889 F.2d 1469, 1471 (5th Cir. 1989)).  In other words, "absent an express or implied order to the contractor to engage in an unsafe work practice leading to an

---

[58]There is no evidence that Defendants asked its independent contractors to engage in an ultrahazardous activity by asking them to secure the moving conductor.  See Ainsworth v. Shell Offshore, Inc., 829 F.2d 548, 549 (5th Cir. 1987) (listing pile driving, storage of toxic gas, blasting with explosives, and crop dusting as examples of ultrahazardous activities).  An activity is only ultrahazardous when it can cause injury even when conducted with the greatest prudence and care.  Id. at 550 (quoting Kent v. Gulf States Utilities Co., 418 So.2d 493, 498 (La. 1982)).  Additionally, the activity must be per se ultrahazardous.  Davis v. Dynamic Offshore Resources, L.L.C., 865 F.3d 235, 236 (5th Cir. 2017).  Securing the moving conductor was routine work. Defendants' MSJ, Docket Entry No. 21, pp. 17–18.

injury, a principal . . . cannot be liable under the operational control exception." <u>Coulter</u>, 117 F.3d at 912.

Defendants argue that they did not retain control over the methods Acadian used to secure the conductor.[59]  The record establishes that both FCG and Acadian contractually retained the "authority and right to direct and control all of the details" of their work.[60]  Although Defendants received updates on what was happening on the platform and gave the ultimate go-ahead to stabilize the conductor, there is no evidence that Defendants ever controlled the methods that Acadian used to secure the conductor. When Daw told Defendants that the conductor was moving, they simply told Daw to ensure it was secured.[61]  Defendants never told Acadian or FCG <u>how</u> to secure the moving conductor.[62]  Ultimately, Acadian made the decision on its own to secure the conductor by using a come-along and welding support braces onto the platform.[63] Additionally, when stabilizing the conductor, Acadian used its own employees and equipment.[64]

---

[59]Defendants' Reply Memorandum, Docket Entry No. 23, pp. 7–9.

[60]Acadian Master Service Agreement, Exhibit E to Defendants' MSJ, Docket Entry No. 21-6, p. 2 ¶ 5; FCG Master Service Agreement, Exhibit F to Defendants' MSJ, Docket Entry No. 21-7, p. 2 ¶ 5.

[61]Daw Deposition, Exhibit C to Plaintiff's Response, Docket Entry No. 22-3, p. 123 lines 7–24.

[62]<u>Id.</u>

[63]<u>Id.</u> at 98–99.

[64]<u>Id.</u>

Plaintiff offers no evidence that Defendants controlled the methods used to secure the moving conductor. Because no genuine issue of material fact exists as to whether Defendants owed Plaintiff a duty under article 2315, Plaintiff cannot establish that Defendants are vicariously liable for his injuries.

2.  Louisiana Civil Code articles 2317 and 2317.1 (Premises Liability)

To establish that Defendants are liable under articles 2317 and/or 2317.1, Plaintiff must show: "(1) the property which caused the damage was in the 'custody' of the defendant; (2) the property had a condition that created an unreasonable risk of harm to persons on the premises; (3) the unreasonably dangerous condition was a cause-in-fact of the resulting injury; and (4) defendant had actual or constructive knowledge of the risk." Voces, 2016 WL 7757384, at *5.

(a)  Custody

"'The first requirement for custodial liability under Louisiana [Civil] Code articles 2317 and 2317.1, is that the 'thing' that caused the injury must be in the custody of the defendant.'" Hammons v. Forest Oil Corp., Civil Action No. 06-9173, 2008 WL 348765, at *4 (E.D. La. Feb. 7, 2008) (quoting Fruge v. Parker Drilling Co., 337 F.3d 558, 565 (5th Cir. 2003)). Although ownership of the 'thing' creates a rebuttable presumption of custody, Leblanc v. Trappey, 838 So.2d 860, 863 (La. Ct. App. 3d Cir. 2003), courts must also look to whether the owner "'exercises

direction and control of the thing and derives some benefit from it.'"[65] Hammons, 2008 WL 348765, at *4 (quoting Fruge, 337 F.3d at 565); see also Dupree v. City of New Orleans, 765 So.2d 1002, 1009 (La. 2000).

Defendants argue that they did not have control of the platform because Daw, an employee of FCG, was in charge of the platform.[66] Under Louisiana law an owner does not retain custody of a platform when it contracts "out [of] its maintenance and inspection duties and retain[s] no control over the activities delegated to" its independent contractors. Smith v. Hall-Houston Oil Co., No. Civ.A. 98-3433, 2000 WL 6265, at *4 (E.D. La. Jan. 4, 2000) (finding that there was no genuine issue of material fact as to whether the defendant had custody of the platform because the defendant had "contracted out its maintenance and inspection duties and retained no control over the activities delegated to" its independent contractors); see also Haas v. Atlanta Richfield, 799 F.2d 1011, 1014-15 (5th Cir. 1986) (finding that there was a genuine issue of material fact as to whether defendant had custody and control over its platform because the defendant was "responsible for the safety of the operations on the platform" and

---

[65]As the owner and operator of the platform Defendants derived benefits from the platform. See Bourg v. BT Operating Co., Civil Action No. H-08-0596, 2009 WL 960011, at *13 (S.D. Tex. April 8, 2009).

[66]See Defendants' Reply Memorandum, Docket Entry No. 23, p. 8.

had ultimate work authority). The record establishes that on the day of the accident, Daw, an employee of FCG, was the person in charge of the platform.[67] Daw, not defendants, had the ultimate work authority on the platform on the day of the accident.[68] Moreover, FCG and Acadian contractually retained the "authority and right to direct and control all of the details of the[ir] Work."[69] However, it is not clear that Defendants actually contracted out its inspection and maintenance duties. Unlike in Smith, where the contracts between the defendant and its independent contractors explicitly stated that the independent contractors were assuming the duties of inspection and maintenance, 2000 WL 626, at *1, here, the contracts between Defendants and Acadian and FCG merely stated that the independent contractors will "provide work, operations, goods and services."[70] Defendants do not offer any evidence that they had completely turned the day-to-day operations over to its independent contractors. In fact, Daw stated that his job on the

---

[67]Daw Deposition Excerpts, Exhibit C to Defendants' MSJ, Docket Entry No. 21-4, p. 5 lines 23-25; Cole Deposition, Exhibit D to Defendants' MSJ, Docket Entry No. 21-5, p. 5 lines 10-20.

[68]Daw Deposition Excerpts, Exhibit C to Defendants' MSJ, Docket Entry No. 21-4, p. 8.

[69]Acadian Master Service Agreement, Exhibit E to Defendants' MSJ, Docket Entry No. 21-6, p. 2 ¶ 5; FCG Master Service Agreement, Exhibit F to Defendants' MSJ, Docket Entry No. 21-7, p. 2 ¶ 5.

[70]Acadian Master Service Agreement, Exhibit E to Defendants' MSJ, Docket Entry No. 21-6, p. 1; FCG Master Service Agreement, Exhibit F to Defendants' MSJ, Docket Entry No. 21-7, p. 1.

platform was to be "the eyes and ears of [his] project manager,"[71] Godchaux, who was employed by Defendants.[72]

Defendants also argue that they did not have custody of the platform at the time of the accident because they did not retain the right to supervise the work being done on the platform.[73] Under Louisiana law an owner does not have custody of its platform if it does not "retain[] a right to supervise, direct and control activities aboard" the platform. Tajonera v. Black Elk Energy Offshore Operations, L.L.C., Civil Action Nos. 13-0366, 13-0550, 13-5137, 13-2496, 13-5508, 13-6022, 13-6099, 13-6413, 14-374, 14-1714, 2015 WL 6758258, at *21 (E.D. La. Nov. 5, 2015); see also Hammmons, 2008 WL 348765, at *4 (finding that "the kind of supervision and control necessary to establish [the principal's] custody for purposes of Articles 2317 and 2317.1" did not exist because the contractor was only supervised by his employer and only received directions from his employer); Nedley v. City of Alexandria, 405 So.3d 1177, 1180–81 (La. Ct. App. 3d Cir. 2025) (affirming the lower court's decision to grant summary judgment because the defendant never controlled the methods of the independent contractor). The evidence establishes that Plaintiff

---

[71]Daw Deposition Excerpts, Exhibit C to Defendants' MSJ, Docket Entry No. 21-4, p. 6 line 10.

[72]Id. lines 12-20.

[73]Defendants' Reply Memorandum, Docket Entry No. 23, pp. 7–9.

was only supervised by his employer or Daw and that he only
received directions from his employer.[74]    Acadian chose how to
secure the moving conductor.[75]    However, there is evidence that
(1) Defendants required its independent contractors to adhere to
their safety guidelines, see Haas, 799 F.2d at 1015 (finding that
there was a genuine issue of material fact as to whether the
defendant had custody of the platform because they were responsible
for the safety of the operations on the platform) and (2) that
Defendants received daily reports from Daw about the platform,[76] see
Tajonera, 2015 WL 6758258, at *20-21 (finding that a genuine issue
of material fact existed as to whether the defendant had custody of
the platform because the defendant maintained the right to enter
the platform and had daily communication about what was happening
on the platform).

    Because Defendants received daily reports about the platform,
required specific safety protocols, and did not clearly contract
out its inspection and maintenance duties, Defendants have failed
to rebut the presumption of custody.    Therefore, there is a genuine

---

    [74]Allemond Deposition, Exhibit B to Defendants' MSJ, Docket
Entry No. 21-3, p. 10 lines 11-18, p. 11 lines 9-11; Daw Deposition
Excerpts, Exhibit C to Defendants' MSJ, Docket Entry No. 21-4, p. 8
lines 3-7 (establishing Daw had ultimate work authority, which
required him to supervise all work on the platform).

    [75]Daw Deposition Excerpts, Exhibit C to Defendants' MSJ, Docket
Entry No. 21-4, pp. 46-47.

    [76]Id. at 6 lines 12-25.

issue of material fact as to whether Defendants had custody over the platform at the time of the accident.

(b)  Unreasonably Dangerous Condition

A platform owner and operator has a duty to find and correct defects that are unreasonably dangerous.  Simon v. CenturyLink, Inc., 340 So.3d 88, 91 (La. Ct. App. 1st Cir. 2021).  Louisiana courts have developed a "risk-utility balancing test to determine whether a condition is unreasonably dangerous."  Id.  "The four pertinent factors to be considered in the risk-utility balancing test are:  (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of social utility or whether the activities are dangerous by nature."[77]  Id. (citing Bufkin v. Felipe's Louisiana, LLC, 171 So.3d 851, 856 (La. 2014)).

Under the fourth prong of the risk-utility test, a plaintiff's status as a repairman is a significant factor in determining whether a defect is unreasonably dangerous.  Celestine v. Union Oil Co. of California, 652 So.2d 1299, 1304 (La. 1995).  Although the

---

[77]Because the platform is a "structure with obvious social and economic benefits," the "community as a whole is served by the owner's efforts to maintain" it.  Ladue v. Chevron, U.S.A., Inc., 920 F.2d 272, 277 (5th Cir. 1991).  The law should "encourage the owner to repair the platform, for that is the 'socially and economically desirable' state of affairs."  Id.

Louisiana Supreme Court has held that there is not a repairman exception to strict liability under articles 2317 and 2322, it has also held that "the individual circumstances, including but not limited to the social, moral, economic considerations, the degree of knowledge of the repairman, the incentive or disincentive to the owner to repair the vice or defect, the reasonableness of presuming that a particular repairman is cognizant of the particular risks, and the ability of the repairmen to minimize such risks, should all be factored into and weighed in the 'unreasonable risk' calculation." Id.   In other words, the defect must create an unreasonably dangerous condition vis-a-vis the repairman.[78]   Id. See also Ladue, 920 F.2d at 277 ("We need only determine whether the [defect] was unreasonably dangerous with respect to [the repairman] and those similarly situated.") (applying articles 2317 and 2322), and the court must consider factors such as whether the repairman was injured by the very condition he was hired to repair, whether the repairman was aware of the danger that injured him before his injury occurred, and whether the repairman had extensive training and experience.

Defendants argue that they are entitled to summary judgment because Plaintiff was injured by the very defect he was asked to

---

[78]Whether the condition was unreasonably dangerous vis-a-vis the repairman falls under the fourth prong of the risk-utility analysis. Fisher v. Villere, 313 So.3d 1282, 1290-91 (La. Ct. App. 4th Cir. 2021).   The analysis of whether the defect is open and obvious to everyone falls under the second prong of the risk-utility analysis.

repair.[79]    The evidence shows that Plaintiff knew he was welding

support braces to the platform in order to limit the movement of

the conductor.[80]    The evidence also shows that (1) welding support

braces on the platform was a routine job,[81] (2) at the time of the

accident Plaintiff "was an experienced welder who previously worked

on offshore structures as well as land-based pipelines,"[82]

(3) Plaintiff was advised on the morning of the accident "verbally

and in writing at least seven (7) times to avoid pinch points

through his hand and finger placement,"[83] and (4) workers on the

platform understood that even though the conductor was secured with

a come-along, it was likely to move because of the movement from

the sea.[84]

       Plaintiff argues that he did not know of the dangerous

condition because (1) he was not warned that the conductor was

---

[79]Defendants' Reply Memorandum, Docket Entry No. 23, pp. 9–10.

[80]Allemond Deposition, Exhibit 2 to Plaintiff's Response, Docket Entry No. 22-2, p. 53 lines 6–14.

[81]Defendants' MSJ, Docket Entry No. 21, pp. 7, 14; <u>see also</u> Daw Deposition Excerpts, Exhibit C to Defendants' MSJ, Docket Entry No. 21-4, p. 64 lines 18-21.

[82]Defendants' MSJ, Docket Entry No. 21, pp. 7, 14; <u>see also</u> Allemond Deposition, Exhibit 2 to Plaintiff's Response, Docket Entry No. 22-2, pp. 14, 20.

[83]Defendants' MSJ, Docket Entry No. 21, p. 11; <u>see also</u> Safety Meeting Report, Exhibit G to Defendants' MSJ, Docket Entry No. 21-8; Acadian HSE Management System, Exhibit H to Defendants' MSJ, Docket Entry No. 21-9.

[84]Daw Deposition, Exhibit 3 to Plaintiff's Response, Docket Entry No. 22-3, p. 86 lines 8-17.

moving after the come-along was in place, (2) he could not see the conductor moving while wearing his welding hood, and (3) because the heavier seas made it more likely that the conductor would move.[85]  However, because Plaintiff's status as a repairman is a significant factor in determining whether a risk is unreasonable, the evidence that Plaintiff offers does not create a genuine issue of material fact as to whether the moving conductor was an unreasonably dangerous condition vis-a-vis Plaintiff.  See Fisher, 313 So.3d at 1291 (finding that there was no genuine issue of material fact as to whether the defect was unreasonably dangerous to the repairman because the repairman was experienced and had inspected the area before the accident); Duffy v. Conoco, Inc., No. Civ. A. 95-0600, 1996 WL 271635, at *5 (E.D. La. May 21, 1996) (holding that even though the plaintiff was not hired to fix the specific defect that injured him, his role as a repairman led him to be able to recognize "the possible dangers" and to "[take] steps to minimize the risk").

Although there is a genuine issue of material fact as to whether Defendants had custody of the platform, there is not a genuine issue of material fact as to whether the moving conductor was an unreasonably dangerous condition vis-a-vis Plaintiff. Plaintiff therefore cannot establish that Defendants are liable for his injuries under articles 2317 and/or 2317.1.

---

[85]Plaintiff's Response, Docket Entry No. 22, pp. 27-28.

3.    Louisiana Civil Code Article 2322 (Premises Liability)

To establish that Defendants are liable under Louisiana Civil Code Article 2322, Plaintiff must prove the following elements: (1) the defendant owned the building;[86] "(2) the owner knew or, in the exercise of reasonable care, should have known of the ruin or defect; (3) the damage could have been prevented by the exercise of reasonable care; (4) the defendant failed to exercise such reasonable care; and (5) causation.'" Cordell, 2018 WL 301331, at *4 (quoting Broussard, 113 So.3d at 182–83). However, a building owner is "only liable for those injuries caused by an unreasonable risk of harm to others." Celestine, 652 So.2d at 1303. Therefore, to recover under article 2322, a plaintiff must establish that he was exposed to an unreasonably dangerous condition. Id.

As discussed above, there is no genuine issue of material fact as to whether the moving conductor was an unreasonably dangerous condition vis-a-vis Plaintiff. Therefore, as a matter of law, Plaintiff cannot establish that Defendants are liable for his injuries under article 2322.

E.    Defendants' Motion to Strike is denied as moot.

Also pending before the court is Defendants' Motion to Strike,[87] to which Plaintiff has filed a response.[88]

---

[86]It is clear that Defendants owned the platform at the time of the accident.    Cole Deposition, Exhibit 1 to Plaintiff's Response, Docket Entry No. 22-1, p. 17 lines 4–20.

[87]Defendants' Motion to Strike, Docket Entry No. 24.

[88]Plaintiff's Response to Defendants' Motion to Strike Declaration of Michael P. Terrell, P.E., Docket Entry No. 36.

None of the opinions of Plaintiff's expert, Michael P. Terrell, P.E., are impermissible conclusions of law. The opinions deal with the appropriate standard of care under the legal duties alleged by Plaintiff. Because the court has concluded that Defendants owed no legal duty to Plaintiff, Terrell's opinions are not relevant to the court's analysis. Accordingly, Defendants' Motion to Strike will be denied as moot.

## V.   Conclusion and Order

After careful consideration and for the reasons discussed above, Defendants' Motion for Summary Judgment (Docket Entry No. 21) is **GRANTED**, and the Motion to Strike Declaration of Michael P. Terrell, P.E. by QuarterNorth Energy LLC and Talos QN Exploration LLC (Docket Entry No. 24) is **DENIED AS MOOT**.

**SIGNED** at Houston, Texas, on this 21st day of November, 2025.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE